**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

| | |
|---|---|
| KLC Financial, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| v. | )   Case No. |
| | ) |
| SARC USA INC, SARC AZ – MESA LLC, SARC IL | ) |
| – ST. CHARLES LLC, SARC IL – AURORA LLC, | ) |
| SARC GA – HIRAM LLC, SARC IL – BUFFALO | ) |
| GROVE LLC, STEVEN MICHAEL CATON, STEPHEN | ) |
| WAYNE HOLDEN, and STEPHEN RYAN HOLDEN, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**

COMES NOW Plaintiff, KLC Financial, LLC ("KLC" or "Plaintiff") by and through undersigned counsel, and for its Complaint against Defendants SARC USA Inc, ("SARC"), SARC AZ- Mesa, LLC ("Mesa"), SARC IL- St. Charles LLC., ("St. Charles"), SARC IL- Aurora LLC ("Aurora"), SARC GA- Hiram, LLC ("Hiram"), SARC IL- Buffalo Grove, LLC ("Buffalo Grove"), Steven Michael Caton, Stephen Ryan Holden and Stephen Wayne Holden (collectively, Mesa, St. Charles, Aurora, Hiram, Buffalo Grove, Steven Michael Caton, Stephen Ryan Holden and Stephen Wayne Holden the "Defendants"), states as follows:

**THE PARTIES**

1.     KLC is a limited liability company organized under the laws of Louisiana and has its principal place of business located at 4350 Baker Road, Suite 100, Minnetonka, MN 55343. The sole member of KLC is Gulf Coast Bank, which is not publicly traded.

2.     SARC is a Missouri corporation whose primary place of business is at 718 W. Business Highway 60, Dexter, MO 63841.

1

3.      Mesa is a Missouri limited liability company with its principal place of business being in 718 W. Business Highway 60, Dexter, MO 63841.  The sole member of Mesa is SARC, a Missouri Corporation.

4.      St. Charles is a Missouri limited liability company with its principal place of business being in 718 W. Business Highway 60, Dexter, MO 63841. The sole member of St. Charles is SARC, a Missouri Corporation.

5.      Aurora is a Missouri limited liability company with its principal place of business being in 718 W. Business Highway 60, Dexter, MO 63841. The sole member of Aurora is Steven Michael Caton, an individual residing in Naperville, Illinois.

6.      Hiram is a Missouri limited liability company with its principal place of business being in 718 W. Business Highway 60, Dexter, MO 63841. The sole member of Hiram is SARC, a Missouri Corporation.

7.      Buffalo Grove is a Missouri limited liability company with its principal place of business being in 718 W. Business Highway 60, Dexter, MO 63841. The sole member of Buffalo Grove is SARC, a Missouri Corporation.

8.      Steven Michael Caton is an individual who is a citizen of Illinois who resides at 2625 Vermillion Court, Naperville, IL 60565.

9.      Stephen Ryan Holden is an individual who is a citizen of Missouri who resides at 11386 Bay Hills Drive, Dexter, MO 63841.

10.     Stephen Wayne Holden is an individual who is a citizen of Florida who resides at 1416 Nighthawk Point, Naples, Florida 34105.

**JURISDICTION AND VENUE**

11.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because KLC and all of the Defendants are citizens of different States and the amount in controversy exceeds $75,000.00.

12.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391.

**BACKGROUND**

*THE PARTIES ENTER INTO THE MESA AGREEMENT*

13.     On or about March 29, 2023, KLC and Mesa entered into Master Equipment Finance Agreement No. 11911A and related Schedule No. 01 (together the "Mesa Agreement") pursuant to which KLC advanced funds in the amount of $2,804,244.00 to purchase certain equipment.  Mesa promised to pay KLC one (1) advance payment of $59,535.00 and sixty (60) monthly payments in the amount of $59,5335.00 per month plus applicable taxes and fees. True and correct copy of the Mesa Agreement and related ancillary documents and addendums is attached hereto as **Exhibit A.**

14.     The equipment financed pursuant to the Mesa Agreement was:

(14)     ea NeuroMed System w/MATRIX System Software w/Standard Accessories:
(14)     ea.  NeuroMed Vasomatic device w/ Standard Accessories;
(14)     ea. Hospital Modality Center, Modality w/ 2- unit shelf support, Top electrode cup holder, Accessories shelf holder, Base with 4 heavy-duty casters
(14)     ea. Special MATRIX Accessory package Part # 05051205-A;
(14)     ea. Special Neuropathy Accessory package Part# 05051205-B;
(14)     ea. NeuroMed Accessories -MATRIX System Operations manual;
(14)     ea. NeuroMed Accessories MATRIX System Electrode placement guide;
(14)     ea. Training Book;
(14)     ea. NeuroMed Accessories Program Guide NeuroMed Electroanalgesic Delivery System;
(14)     ea. NeuroMed Accessories - What is the Theory of Electrophysiology;
(14)     ea. NeuroMed Accessories CPT codes and ICD 10 Codes;
(1)     ea. NeuroMed Accessories - Personalized Patient PAIN Brochure Layout;

3

(1)   ea. NeuroMed Accessories - Personalized Patient Knee PAIN Brochure Layout In Spanish;

(1)   ea. NeuroMed Accessories - Personalized Patient Neuropathy PAIN Brochure Layout;

(1)   ea. NeuroMed Accessories Personalized Patient Neuropathy PAIN Brochure Layout In Spanish;

(1)   ea. NeuroMed Accessories Design and layout front office Retractable Banner (6.7' X 2.8');

(14)  ea. Additional Warranty on Medical Equipment is 2 year only (parts and labor) from date of purchase and Purchaser understands and agrees that Manufacturer warrants the purchased Medical Equipment for two years only, from date of purchase.";

(1)   MRI diagnostic equip: Esaote S-Scan MSK MRI for Extremities, LSpine, and C-Spine;

(1)   ea. RF Pavilion or Technoshield, Patient Table, Large patient coil package, Magnetic Compensation Module, Accessory Cupboard, Uninterruptible Power Supply PC and MRI, Rigging for basic first and second floor installation;

(2)   ea. C-Arm GE OEC Fluoroscopy, Digital Mobile C-Arm, GE OEC One all in one compact C Arm, 27" high resolution mounted display, Mounted articulating arm with 5 ranges of motion, Touch screen tablet with intuitive interface, 2.5 KW generator;

(2)   ea. Stretcher Hill-Rom P Series Stretcher Steering Plus System, One Step Tuck-Away Side Rails, BackSaver Fowler, Head and Foot Break;

(1)   ea. Stryker Multigen RFA, 100 watt two generator system, Ultra-responsive touchscreen, USB port;

(1)   ea. Procedure Table OakWorks CFPM Fluoro & Spine Procedure Table Set, Integrated Headrest Crescent face pad, 3 Position Height 26-44, Trendelenburg, Radiolucent Foam top, 4"" locking casters;

(3)   ea. Patient Monitors Mindray ePM 10M w/3/5 lead ECG, arrhythmia analysis, Masimo SpO2, NIBP, temp, respiration (pn 9204E-PA00001), CO2 Module Adult/Pediatric ePM;
Rolling Stand w/ quick release;

(1)   ea. Lab Equipment TS Sorvall (2), Fisher Isotemp, Thermofisher Biological Safety Cabinet, Sorvall Microcentrifuge, Isotemp refrigerator;

(1)   ea. Galvanic System, Galvanic Skin Response Autonomic Nervous System TM Flow, SN: GAL01-17001, Software TM Flow, Hardware Galvanic Skin Response, Hardware Oximeter, Hardware Ankle Brachial Index (ABI);

(1)   ea. Korebalance System, Korebalance Assessment & Rehabilitation, SN: KOR01-17001, Korebalance Premiere System, 22"" Medical Touchscreen (KB01-22), Software Cognition, Parkinson's, Useful Field of View Suite, and multiple games package;

(1)   ea. NeuroStar System NeuroStar Transcranial Magnetic Stimulation, SN: NEU01-17001, Console, chair and accessories, Software TrakStar proprietary patient data management software,

4

(1)    ea. WAVi System, WAVi Electroencephalogram Headset SN: WAV01-17001, Headsets small, medium and large, Hardware WAVi Approved Tablet w/loaded software; Syringes, headsets, needles, quick session guide, instruction manual;

(2)    ea. Ultrasound System My Lab X5 Esaote touchscreen, LCD High Resolution Widescreen, Linear array transducer, L4-15, Convex array transducer, AC2541, Mobile trolley, AC adapter retractable 3-flat-pin power cable, height adjustable, storage bin, gel holder, towelette holster, and printer bracket, General imaging License, Mview License, Wireless License, DICOM License, Needle Visualization License, Loaner Program."

15.    KLC and Mesa also entered into an additional Security Agreement for Additional Collateral No. 11911A wherein Mesa granted KLC a security interest for the repayment and performance of all obligations owed to KLC in the following Additional Collateral:

(1)    Assignment of Lease Agreement #0002 dated 3/22/2023 between Lessor: SARC AZ- MESA, LLC and Lessee: Neuragenex Treatment Centers LLC, and Continuing Guaranty dated 3/22/2023.

16.    Mesa granted KLC a lien and/or a first priority security interest in the Equipment and the Additional Collateral (collectively the "Mesa Equipment") together with all parts, accessories, repairs, replacements, improvements and accessions to the Equipment.

17.    KLC has now and at all times had a first priority perfected purchase money security interest in the Mesa Equipment.

18.    The Mesa Agreement provides that failure to make the required payments on time is an event of default under the Mesa Agreement.

19.    To induce KLC to enter into the Mesa Agreement and to secure absolute and unconditional payment and performance of all obligations owed to KLC under the Mesa Agreement, including but not limited to, all principal, interest, costs, late charges, taxes, fees, out of pocket expenses and attorney fees, on or about March 29, 2023, SARC, Steven Michael Caton, Stephen Ryan Holden, and Stephen Wayne Holden, each executed an Unconditional Guaranty of Mesa Agreement (each a "Mesa Guarantor" and together, the "Mesa Guarantors" and the "Mesa

5

Guaranties"). True and correct copies of the Mesa Guaranties executed by the Mesa Guarantors of the Mesa Agreement are attached hereto collectively as **Exhibit B.**

20. KLC has performed all of its obligations under the Mesa Agreement.

21. Mesa has defaulted on its obligations under the Mesa Agreement by failing to make all required monthly payments when due as set forth in the Mesa Agreement.

22. The Mesa Guarantors are each in default under the terms of their respective Guaranties.

23. The amount due and owing under the Mesa Agreement after credit for all payments received as of the date of this Complaint is $3,586,983.75 with daily interest accruing as of December 20, 2023

24. KLC has made written demand upon Defendants for payment and return of the Mesa Equipment, but the Defendants have failed and refused to do so.

25. KLC has made written demand upon each Mesa Guarantor for payment and return of the Mesa Equipment, but each Mesa Guarantor has failed and refused to do so.

THE PARTIES ENTER INTO St. CHARLES AGREEMENT

26. On or about March 31, 2023, KLC and St. Charles entered into Master Equipment Finance Agreement No. 12308A and related Schedule No. 01 (together the "St. Charles Agreement") pursuant to which KLC advanced funds in the amount of $1,015,124.00 to purchase certain equipment. St. Charles promised to pay KLC one (1) payment of $21,555.00 and sixty (60) monthly payments in the amount of $21,555.00 per month. True and correct copies of the St. Charles Agreement is attached hereto as **Exhibit C**

27. The equipment financed pursuant to the St. Charles Agreement was:

(14)  ea. NeuroMed System w/MATRIX System Software w/Standard Accessories;
(14)  ea. NeuroMed Vasomatic device w/Standard Accessories;

6

(14)   ea. Hospital Modality Center - Modality w/ 2- unit shelf support, Top electrode cup holder, Accessories shelf holder, Base with 4 heavy-duty casters;

(14)   ea. Special MATRIX Accessory package;

(14)   ea. Special Neuropathy Accessory package Part # 05051205-B;

(14)   ea. NeuroMed Accessories -MATRIX System Operations manual, English;

(14)   ea. NeuroMed Accessories -MATRIX System Electrode placement guide;

(14)   ea. NeuroMed Accessories Program Guide NeuroMed Electroanalgesic Delivery System (MATRIX software version 1/1.0);

(14)   ea. NeuroMed Accessories - What is the Theory of Electrophysiology;

(14)   ea. NeuroMed Accessories - CPT codes and ICD 10 Codes;

(1)   ea. NeuroMed Accessories - Personalized Patient PAIN Brochure Layout Item;

(1)   ea. NeuroMed Accessories - Personalized Patient Knee PAIN Brochure Layout In Spanish;

(1)   ea. NeuroMed Accessories Personalized Patient Neuropathy PAIN Brochure Layout;

(1)   ea. NeuroMed Accessories - Personalized Patient Neuropathy PAIN Brochure Layout in Spanish;

(1)   ea. NeuroMed Accessories - Design and layout front office Retractable Banner (6.7' X 2.8');

(14)   ea. NeuroMed Total MATRIX System;

(1)   ea. LCD High Resolution Widescreen Linear array transducer Convex array transducer, AC2541 Mobile trolley, AC adapter retractable 3-flat-pin power cable, height adjustable, storage bin, gel holder, towelette holster, and printer bracket Nervous System TM Flow, Serial #GAL01-17001, Software - TM Flow, Hardware -Galvanic Skin Response, Hardware Oximeter, Hardware - Ankle Brachial Index (ABI),

28.    KLC and St. Charles also entered into an additional Security Agreement for Additional Collateral No. 12308A wherein SARC granted KLC a security interest for the repayment and performance of all obligations owed to KLC in the following Additional Collateral:

(1)   Assignment of Lease Agreement #0006 dated 3/28/2023 between Lessor: SARC IL- St. Charles, LLC and Lessee: Neuragenex Treatment Centers LLC and continuing guarantee dated 3/28/2023

29.    St. Charles granted KLC a lien and/or a first priority security interest in the Equipment and the Additional Collateral (collectively the "St. Charles Equipment") together with all parts, accessories, repairs, replacements, improvements and accessions to the St. Charles Equipment.

7

30.     KLC has now and at all times had, a first priority perfected purchase money security interest in the St. Charles Equipment.

31.     The St. Charles Agreement provides that failure to make the required payments on time is an act of default under the St. Charles Agreement.

32.     To induce KLC to enter into the St. Charles Agreement and to secure absolute and unconditional payment and performance of all obligations owed to KLC under the St. Charles Agreement, including but not limited to, all principal, interest, costs, late charges, taxes, fees, out of pocket expenses and attorney fees, on or about March 31, 2023, SARC, Steven Michael Caton, Stephen Ryan Holden, and Stephen Wayne Holden, each executed an unconditional Guaranty of the St. Charles Agreement (each a "St. Charles Guarantor," together, the "St. Charles Guarantors" and the "St. Charles Guaranties").  True and correct copies of the St. Charles Guaranties executed by the St. Charles Guarantors are attached hereto collectively as **Exhibit D.**

33.     KLC has performed all of its obligations under the St. Charles Agreement.

34.     St. Charles has defaulted on its obligations under the St. Charles Agreement by failing to make all required monthly payments when due as set forth in the St. Charles Agreement.

35.     The St. Charles Guarantors are each in default under the terms of their respective St. Charles Guaranties.

36.     The amount due and owing under the St. Charles Agreement after credit for all payments received as of the date of this Complaint is $1,163,970.00 with daily interest accruing as of December 20, 2023.

37.     KLC has made written demand upon Defendants for payment and return of the St. Charles Equipment, but the Defendants have failed and refused to do so.

8

38.    KLC has made written demand upon each St. Charles Guarantor for payment and return of the St. Charles Equipment, but each St. Charles Guarantor has failed and refused to do so.

*THE PARTIES ENTER INTO AURORA AGREEMENT*

39.    On or about April 18, 2023, KLC and Aurora entered into Master Equipment Finance Agreement No. 12359A and related Schedule No. 01 (together the "Aurora Agreement") pursuant to which KLC advanced funds in the amount of $1,015,124.00 to purchase certain equipment.  Auora promised to pay KLC one (1) payment of $21,685.00 and sixty (60) monthly payments in the amount of $21,685.00 per month. True and correct copies of the Aurora Agreement and related ancillary documents and addendums are attached hereto as **Exhibit E.**

40.    The equipment financed pursuant to the Aurora Agreement was:

(1)    ea. Galvanic Skin Response Autonomic Nervous System TM Flow Serial #GAL01-17001 Software - TM Flow, Hardware - Galvanic Skin Response, Hardware - Oximeter. Hardware;

(1)    ea. Zibrio Balance, Stability PRO, Balance Care, Balance Coach, Training and Certification;

(14)    ea. NeuroMed System w/MATRIX System Software w/Standard Accessories;

(14)    ea. NeuroMed Vasomatic device w/Standard Accessories;

(14)    ea. Hospital Modality Center w/2 unit shelf support;

(14)    ea. Special Matrix Accessory Package Part #05051205-A;

(14)    ea. Special Neuropathy Accessory package Part # 05051205-B;

(1)    ea. LCD High Resolution Widescreen Linear array transducer, L4-15 Convex array transducer, AC2541, Mobile trolley, AC adapter retractable 3-flat-pin power cable, height adjustable, storage bin, gel holder, towelette holster, and printer bracket.

41.    KLC and Aurora also entered into an additional Security Agreement for Additional Collateral No. 12359A wherein SARC granted KLC a security interest for the repayment and performance of all obligations owed to KLC in the following Additional Collateral:

(1)    Assignment of Lease Agreement #0007 dated 3/29/2023 between Lessor: SARC IL- Aurora, LLC and Lessee: Neuragenex Treatment Centers LLC, and Continuing Guaranty dated 3/29/2023

9

42. Aurora granted KLC a lien and/or a first priority security interest in the Equipment and the Additional Collateral (collectively the "Aurora Equipment") together with all parts, accessories, repairs, replacements, improvements and accessions to the Aurora Equipment.

43. KLC has now and at all times had, a first priority perfected purchase money security interest in the Aurora Equipment.

44. The Aurora Agreement provides that failure to make the required payments on time is an act of default under the Aurora Agreement.

45. To induce KLC to enter into the Aurora Agreement and to secure absolute and unconditional payment and performance of all obligations owed to KLC under the Aurora Agreement, including but not limited to, all principal, interest, costs, late charges, taxes, fees, out of pocket expenses and attorney fees on or about April 18, 2023, SARC, Steven Michael Caton, Stephen Ryan Holden and Stephen Wayne Holden each executed an unconditional Guaranty of Aurora Agreement ( each an "Aurora Guarantor" and together, the "Aurora Guarantors" and the "Aurora Guaranties"). True and correct copies of the Aurora Guaranties executed by the Aurora Guarantors are attached hereto collectively as **Exhibit F.**

46. KLC has performed all of its obligations under the Aurora Agreement.

47. Aurora has defaulted on its obligations under the Aurora Agreement by failing to make all required monthly payments when due as set forth in the Aurora Agreement.

48. The Aurora Guarantors are each in default under the terms of their respective Aurora Guaranties.

49. The amount due and owing under the Aurora Agreement after credit for all payments received as of the date of this Complaint is $1,192,675.00 with daily interest accruing as of December 1, 2023.

50.     KLC has made written demand upon Defendants for payment and return of the Aurora Equipment, but the Defendants have failed and refused to do so.

51.     KLC has made written demand upon each Aurora Guarantor for payment and return of the Aurora Equipment, but each Aurora Guarantor has failed and refused to do so.

*THE PARTIES ENTER INTO HIRAM AGREEMENT*

52.     On or about April 28, 2023, KLC and Hiram entered into Master Equipment Finance Agreement No. 12366A and related Schedule No. 01 (together the "Hiram Agreement") pursuant to which KLC advanced funds in the amount of $1,015,124.00 to purchase certain equipment.  Hiram promised to pay KLC one (1) payment of $21,685.00 and sixty (60) monthly payments in the amount of $21,685.00 per month. True and correct copy of the Hiram Agreement is attached hereto as **Exhibit G.**

53.     The equipment pursuant to the Hiram Agreement was:

(1)     ea. LCD High Resolution Widescreen, Linear array transducer, Convex array transducer, Mobile trolley;
(1)     ea. Galvanic Skin Response Autonomic Nervous System TM Flow SN: GAL01-17001;
(1)     ea. Zibrio Balance, Stability PRO;
(14)    ea. NeuroMed System w/MATRIX System Software w/Standard Accessories;
(14)    ea. NeuroMed Vasomatic device w/Standard Accessories;
(14)    ea. Hospital Modality Center cart;
(14)    ea. Special Matrix Accessory Package Part #05051205-A;
(14)    ea. Special Neuropathy Accessory package Part # 05051205-B;
(14)    ea. matrix system operations manual English;
(14)    ea. Matrix System Electrode placement guide training book green;
(14)    ea. Program Guide NeuroMed Electroanalgesic Delivery System

54.     KLC and Hiram also entered into an additional Security Agreement for Additional Collateral No. 12366A wherein Hiram granted KLC a security interest for the repayment and performance of all obligations owed to KLC in the following Additional Collateral:

11

(1)     Assignment of Lease Agreement #0008 between Lessor: SARC GA- Hiram, LLC and Lessee: Neuragenex Treatment Centers LLC, and Continuing Guaranty dated 3/29/2023.

55.     Hiram granted KLC a lien and/or a first priority security interest in the Equipment and the Additional Collateral (collectively the "Hiram Equipment") together with all parts, accessories, repairs, replacements, improvements and accessions to the Hiram Equipment.

56.     KLC has now and at all times had, a first priority perfected purchase money security interest in the Hiram Equipment.

57.     The Hiram Agreement provides that failure to make the required payments on time is an act of default under the Hiram Agreement.

58.     To induce KLC to enter into the Hiram Agreement and to secure absolute and unconditional payment and performance of all obligations owed to KLC under the Hiram Agreement, including but not limited to, all principal, interest, costs, late charges, taxes, fees, out of pocket expenses and attorney fees, on or about April 28, 2023, SARC, Steven Michael Caton, Stephen Ryan Holden and Stephen Wayne Holden each executed an unconditional Guaranty of the Hiram Agreement (each a "Hiram Guarantor", and together, the "Hiram Guarantors" and the "Hiram Guaranties").  True and correct copies of the Hiram Guaranties executed by the Hiram Guarantors are attached hereto collectively as **Exhibit H.**

59.     KLC has performed all of its obligations under the Hiram Agreement.

60.     Hiram has defaulted on its obligations under the Hiram Agreement by failing to make all required monthly payments when due as set forth in the Hiram Agreement.

61.     The Hiram Guarantors are each in default under the terms of their respective Hiram Guaranties.

62.     SARC, Steven Michael Caton, Stephen Ryan Holden and Stephen Wayne Holden are in default under the terms of the Hiram Agreement and Hiram Guaranty.

63.     The amount due and owing under the Hiram Agreement after credit for all payments as of the date of this complaint is $1,214,360.00 with daily interest accruing as of December 20, 2023.

64.     KLC has made written demand upon Defendants for payment and return of the Hiram Equipment, but the Defendants have failed and refused to do so.

65.     KLC has made written demand upon each Hiram Guarantor for payment and return of the Hiram Equipment, each Hiram Guarantor has failed and refused to do so.

*THE PARTIES ENTER INTO BUFFALO GROVE AGREEMENT*

66.     On or about May 4, 2023 KLC and SARC entered into Master Equipment Finance Agreement No. 12581A and related Schedule No. 01 (together the "Buffalo Grove Agreement") pursuant to which KLC advanced funds in the amount of $1,015,124.00 to purchase certain equipment.  Buffalo Grove promised to pay KLC one (1) payment of $21,956.00 and sixty (60) monthly payments in the amount of $21,956.00 per month. True and correct copies of the Buffalo Grove Agreement and related ancillary documents and addendums are attached hereto as **Exhibit I.**

67.     The equipment financed pursuant to the Buffalo Grove Agreement was:

(1)     ea. LCD High ResolutionWidescreen, Linear array transducer L4-15, Convex array transducer AC2541, Mobile Trolley;
(1)     ea. Galvanic Skin Response Autonomic Nervous System TM Flow SN: GAL01-17001;
(1)     ea. Zibrio Balance, Stability PRO;
(14)    ea. NeuroMed System w/MATRIX System Software w/Standard Accessories;
(14)    ea. NeuroMed Vasomatic device w/Standard Accessories;
(14)    ea. Hospital Modality Center cart;
(14)    ea. Special Matrix Accessory Package Part #05051205-A;
(14)    ea. Special Neuropathy Accessory package Part # 05051205-B;

(14)    ea. matrix system operations manual English;
(14)    ea. Matrix System Electrode placement guide training book green;
(14)    ea. Program Guide NeuroMed Electroanalgesic Delivery System

68.    KLC and Buffalo Grove also entered into an additional Security Agreement for Additional Collateral No. 12581A wherein Buffalo Grove granted KLC a security interest for the repayment and performance of all obligations owed to KLC in the following Additional Collateral:

(1)    Assignment of Lease Agreement #0012 between Lessor: SARC IL- Buffalo Grove, LLC and Lessee: Neuragenex Treatment Centers LLC, and Continuing Guaranty dated 4/3/2023.

69.    Buffalo Grove granted KLC a lien and security interest in the Equipment and the Additional Collateral (collectively the "Buffalo Grove Equipment") together with all parts, accessories, repairs, replacements, improvements and accessions to the Equipment.

70.    KLC has now and at all times had a first priority perfected purchase money security interest in the Buffalo Grove Equipment.

71.    The Buffalo Grove Agreement provides that failure to make the required payments on time is an act of default under the Buffalo Grove Agreement.

72.    To induce KLC to enter into the Buffalo Grove Agreement and to secure absolute and unconditional payment and performance of all obligations owed to KLC under the Buffalo Grove Agreement, including but not limited to, all principal, interest, costs, late charges, taxes, fees, out of pocket expenses and attorney fees, on or about May 4, 2023, SARC, Steven Michael Caton, Stephen Ryan Holden and Stephen Wayne Holden each executed an unconditional Guaranty of Buffalo Grove Agreement (each a "Buffalo Grove Guarantor" and together, the "Buffalo Grove Guarantors" and the "Buffalo Grove Guaranties"). True and correct copies of the Buffalo Grove Guaranties executed by the Buffalo Grove Guarantors are attached hereto collectively as **Exhibit J.**

14

73.    KLC has performed all of its obligations under the Buffalo Grove Agreement.

74.    Buffalo Grove has defaulted on its obligations under the Buffalo Grove Agreement by failing to make all required monthly payments when due as set forth in the Buffalo Grove Agreement.

75.    The Buffalo Grove Guarantors are each in default under the terms of their respective Buffalo Grove Guaranties.

76.    The amount due and owing under the Buffalo Grove Agreement after credit for all payments received as of the date of this Complaint is $1,163,668.00 with daily interest accruing as of December 20, 2023.

77.    KLC has made written demand upon Defendants for payment and return of the Buffalo Grove Equipment, but the Defendants have failed and refused to do so.

78.    KLC has made written demand upon each Buffalo Grove Guarantor for payment and return of the Buffalo Grove Equipment, but each Buffalo Grove Guarantor has failed and refused to do so.

## COUNT I

### WRIT OF REPLEVIN AGAINST ALL DEFENDANTS - MESA, St CHARLES, AURORA, HIRAM, BUFFALO GROVE, STEVEN MICHAEL CATON, STEPHEN RYAN HOLDEN AND STEPHEN WAYNE HOLDEN

79.    Plaintiff KLC repeats and realleges all preceding paragraphs as though fully set forth herein.

80.    KLC and certain Defendants entered into equipment finance agreements set forth in this Complaint along with all related ancillary documents, schedules and ancillary documents (all together with the Mesa Equipment, the St. Charles Equipment, the Aurora Agreement, the Hiram Equipment and the Buffalo Grove Equipment collectively the "Equipment" and together

15

with the Mesa Agreement, the St. Charles Agreement, the Aurora Agreement, the Hiram Agreement and the Buffalo Grove Agreement collectively the "Finance Contracts")

81.    Pursuant to Finance Contracts, KLC financed the purchase of the Equipment.

82.    As a security for the equipment financing, Defendants granted to KLC a first priority security interest in the Equipment.

83.    KLC filed Uniform Commercial Code Financing Statements, recorded with the Missouri Secretary of State, Identifying KLC as a lienholder of the Equipment. **Exhibit K**.

84.    Pursuant to paragraph 21 of the Finance Contracts, the failure of Defendants to make requisite payments due and owing KLC under the applicable Finance Contracts constitutes an "Event of Default"

85.    Upon the occurrence of an "Event of Default" under the terms of the Finance Contracts KLC is entitled to immediate possession of the Equipment and Defendants must immediately tender the Equipment to KLC.

86.    KLC has performed all of its obligations under the Finance Contracts and has satisfied all conditions precedent necessary to the enforcement of the Equipment Contracts.

87.    An Event of Default occurred under the Finance Contracts as a result of the Defendants failure to make all required payments due and owing to KLC. Currently, the Defendants are indebted to KLC in an amount of $6,932,811.04, plus interest that continues to accrue since January 1, 2024 at a rate of 18% per annum or the highest rate allowed under law.

88.    Subsequent to the occurrence of the Event of Default, KLC demanded that the Defendants relinquish possession and control of the Equipment to KLC in accordance with the terms of the Finance Contracts.  The Defendants have failed to surrender the Equipment and continue to refuse to do so.

89.    The Equipment is being wrongfully detained by the Defendants.

90.    KLC is entitled to immediate possession of the Equipment in accordance with the express terms of the Finance Contracts and in accordance with Missouri law.

91.    The Equipment has not been taken for tax, assessment or fine levied by virtue of any law of this state against the property of KLC or against it individually, nor seized under any legal process against the goods and chattels of KLC subject to such lawful process.

92.    KLC is also entitled to the remedies provided under the Uniform Commercial Code as to the Equipment.

93.    Section 9-609(a)(1) and (c) of the Uniform Commercial Code, captioned "Secured Party's Right to Take Possession After Default" provides, in pertinent part, that after default, a secured party may take possession of the collateral and, if so, agreed by the parties, a secured party may require the debtor to assemble the collateral and make it available to the secured party at a place to be designated by the secured party which is reasonably convenient to both parties. See *MO. Stat. § 400.9-609*.

94.    In addition, Article 9 of the Uniform Commercial Code also provides that Plaintiff may foreclose on the Equipment.

95.    The actual value of the Equipment is estimated to be $6,864,740.00, depending upon its condition.

96.    Upon information and belief, the Equipment is in the possession of and/or under the control of Defendants and is currently being held at principal place of business located at 718 W. Business Highway 60, Dexter MO 63841 or at such other locations under control of the Defendants.

97.    KLC is at risk of having the delivered the Equipment to third parties and KLC is in

danger of losing the Equipment unless immediate possession of the Equipment is obtained or the Equipment is otherwise secured.

WHEREFORE, KLC, prays that this Court:

a. issue an order against the Defendants jointly and severally, requiring the Defendants to surrender and turnover possession of the Equipment to KLC in good condition, less reasonable wear and tear, within five (5) days from the date of this Court's Order;

b. awarding KLC for the value of the Equipment not surrendered by the Defendants and damages for the time of Defendants' unjust detainment or unlawful taking;

c. if the Defendants fail to surrender and turnover the Equipment, issue an order directing the US Marshalls or the appropriate officer of the law to enter into any such locations where the Equipment may be being detained using such force as is necessary and secure such Equipment for KLC upon appropriate issuance of bond or other security as the Court determines;

d. further if Defendants do not surrender and return the Equipment or the Equipment is not returned to KLC, to issue judgment, joint and severally, against each Defendant for the replacement value of the Equipment not surrendered; and

e. awarding such other relief as this Court deems just.

**COUNT II**
**<u>ORDER TO REQUIRE TURNOVER OF EQUIPMENT AGAINST ALL DEFENDANTS</u>**

98.     Plaintiff KLC repeats and realleges all preceding paragraphs as though fully set

forth herein.

99.     KLC and Defendants entered into Finance Contracts pursuant to which KLC financed the purchase of the Equipment.

100.    As a security for the equipment financing in question, Defendants granted to KLC a first priority perfected security interest in the Equipment.

101.    Pursuant to the Finance Contracts, the failure of Defendants to make requisite payments due and owing KLC constitutes an "Event of Default"

102.    Upon the occurrence of an "event of default" under the terms of the Finance Contracts, KLC is entitled to immediate possession of the Equipment and Defendants must immediately tender the Equipment to KLC.

103.    KLC has performed all of its obligations under the Finance Contracts and has satisfied all conditions precedent necessary to the enforcement of the Finance Contracts.

104.    The Defendants accepted delivery of the Equipment, and upon information and belief is currently in possession of the Equipment or constructive possession of the Equipment.

105.    Subsequent to the occurrence of the Event of Default, KLC demanded that the Defendants relinquish possession and control of the Equipment to KLC in accordance with the terms of the Finance Contracts and related Guaranties. The Defendants have and continue to refuse to do so.

106.    The value of the Equipment is estimated to be $6,864,740.00, depending upon its condition.

107.    The Equipment is being wrongfully detained by the Defendants.

108.    Upon information and belief, the Equipment is in the possession of and/or under the control of Defendants and is currently being held at SARC's principal place of business located

at 718 W. Business Highway 60, Dexter MO 63841 or at such other locations as SARC or any of the Defendants may have delivered the Equipment to third parties and KLC is in danger of losing the Equipment unless immediate possession of the Equipment is obtained or the Equipment is otherwise secured.           .

109.    The Defendant should be ordered, jointly and severally, to immediately surrender, turnover, and account for the Equipment to KLC or its agent(s).

WHEREFORE, KLC prays that this Court issue an order against the Defendants, jointly and severally, directing each of them to surrender and turn over possession of the Equipment in good condition, less reasonable wear and tear, pursuant to the terms and conditions of the Agreement and deliver such property to KLC within five (5) days from the date of such order.

**COUNT III**
**<u>BREACH OF CONTRACT UNDER THE MESA AGREEMENT</u>**

110.    Plaintiff KLC restates and realleges all preceding paragraphs as though fully set forth herein.

111.    The Mesa Agreement is a valid and enforceable contract.

112.    KLC duly and fully performed its obligations under the Mesa Agreement.

113.    Mesa' failure and refusal to pay the due and owing under the Mesa Agreement constitutes a default under the Mesa Agreement and amounts to a breach of Mesa's contractual obligations to KLC.

114.    KLC has demanded Mesa pay all amounts due and owing to KLC under the Mesa Agreement.

115.    Mesa has failed and/or refused to respond to KLC's demands for payment under the Mesa Agreement.

116.    Mesa promised to pay KLC's attorneys' fees and costs incurred to enforce its rights under the Mesa Agreement.

117.    Additional late fees, default interest accrues at 18% per annum or the maximum allowed by applicable law, NSF fees, repossession costs, and attorneys' fees may, and/or will accrue on the amount due and owing KLC under the Mesa Agreement.

118.    Plaintiff has been injured by Mesa's breach of the Mesa Agreement in the amount of not less than $3,586,983.75 plus default interest at the rate of 18% per annum from December 20, 2023 until the date of judgment, or the maximum amount allowed by applicable law, repossession costs, and attorneys' fees and costs incurred in the enforcement of the Mesa Agreement.

WHEREFORE, KLC requests this honorable Court enter judgement in favor of KLC against Mesa, as follows:

    a.   Enter judgment against Mesa in the amount not less than **$3,586,983.75,** plus the late fees and charges that have accrued since the date of filing;

    b.   That KLC recover its attorneys' fees and costs incurred in pursuing these claims;

    c.   That KLC have and recover pre-and post-judgment interest to the extent provided by the Finance Contracts and applicable under law;

    d.   For such other relief as the Court deems just and proper.

**COUNT IV**
**BREACH OF CONTRACT UNDER THE St CHARLES AGREEMENT**

119.    Plaintiff KLC restates and realleges all preceding paragraphs as though fully set forth herein.

120.    The St. Charles Agreement is a valid and enforceable contract.

121.    KLC duly and fully performed its obligations under the St. Charles Agreement.

122.    St. Charles' failure and refusal to pay the amounts due and owing under the St. Charles Agreement constitutes a default under the St. Charles Agreement and amounts to a breach of St. Charles's contractual obligations to KLC.

123.    KLC has demanded St. Charles pay all amounts due and owing to KLC under the St. Charles Agreement.

124.    St. Charles has failed and/or refused to respond to KLC's demands for payment under the St. Charles Agreement.

125.    St. Charles promised to pay KLC's attorneys' fees and costs incurred to enforce its rights under the St. Charles Agreement.

126.    Additional late fees, default interest accruing at 18% per annum or the maximum allowed by applicable law, NSF fees, repossession costs, and attorneys' fees may, and/or will accrue on the amount due and owing KLC under the St. Charles Agreement.

127.    KLC has been injured by St. Charles's breach of the St. Charles Agreement in the amount of not less than the **$1,163,970.00** plus default interest at the rate of 18% per annum from December 20, 2023 until the date of judgment, or the maximum amount allowed by applicable law, repossession costs, and attorneys' fees and costs incurred in the enforcement of the St. Charles Agreement.

WHEREFORE, KLC requests this honorable Court enter judgement in favor of KLC against St. Charles as follows:

a. Enter judgment against St. Charles in the amount not less than **$1,163,970.00,** plus the late fees and charges that have accrued since the date of filing;

b. That KLC recover its attorneys' fees and costs incurred in pursuing these claims;

c. That KLC have and recover pre-and post-judgment interest to the extent provided by applicable law;

d. For such other relief as the Court deems just and proper.

## COUNT V
## BREACH OF CONTRACT UNDER THE AURORA AGREEMENT

127. Plaintiff KLC restates and realleges all preceding paragraphs as though fully set forth herein.

128. The Aurora Agreement is a valid and enforceable contract.

129. KLC duly and fully performed its obligations under the Aurora Agreement.

130. Aurora's failure and refusal to pay all amounts due and owing under the Aurora Agreement to KLC constitutes a default under the Aurora Agreement and amounts to a breach of Aurora's contractual obligations to KLC.

131. KLC has demanded Aurora pay all amounts due and owing to KLC under the Aurora Agreement.

132. Aurora has failed and/or refused to respond to KLC's demands for payment under the Aurora Agreement.

133. Aurora promised to pay KLC's attorneys' fees and costs incurred to enforce its rights under the Aurora Agreement.

134. Additional late fees, default interest accrues at 18% per annum or the maximum allowed by applicable law, NSF fees, repossession costs, and attorneys' fees may, and/or will accrue on the amount due and owing Plaintiff under the Aurora Agreement.

135.	Plaintiff has been injured by Aurora's breach of the Aurora Agreement in the amount of not less than **$1,192,675.00** plus default interest at the rate of 18% per annum from December 1, 2023 until the date of judgment, or the maximum amount allowed by applicable law, repossession costs, and attorneys' fees and costs incurred in the enforcement of the Aurora Agreement.

WHEREFORE, KLC requests this honorable Court enter judgement in favor of KLC against Aurora as follows:

    a.	Enter judgment against Aurora in the amount of not less than **$1,192,675.00,** plus the late fees and charges that have accrued since the date of filing;

    b.	That KLC recover its attorneys' fees and costs incurred in pursuing these claims;

    c.	That KLC have and recover pre-and post-judgment interest to the extent provided by applicable law;

    d.	For such other relief as the Court deems just and proper.

## COUNT VI
## BREACH OF CONTRACT UNDER THE HIRAM AGREEMENT

136.	Plaintiff KLC restates and realleges all preceding paragraphs as though fully set forth herein.

137.	The Hiram Agreement is a valid and enforceable contract.

138.	KLC duly and fully performed its obligations under the Hiram Agreement.

139.	Hiram's failure and refusal to pay all amounts due and owing under the Hiram Agreement to KLC constitutes a default under the Hiram Agreement and amounts to a breach of Hiram's contractual obligations to KLC.

140. KLC has demanded Hiram pay all amounts due and owing to KLC under the Hiram Agreement.

141. Hiram has failed and/or refused to respond to KLC's demands for payment under the Hiram Agreement.

142. Hiram promised to pay KLC's attorneys' fees and costs incurred to enforce its rights under the Hiram Agreement.

143. Additional late fees, default interest accrues at 18% per annum or the maximum allowed by applicable law, NSF fees, repossession costs, and attorneys' fees may, and/or will accrue on the amount due and owing KLC under the Hiram Agreement.

144. KLC has been injured by Hiram's breach of the Hiram Agreement in the amount of not less than **$1,214,360.00,** plus default interest at the rate of 18% per annum from December 20, 2023 until the date of judgment, or the maximum amount allowed by applicable law, repossession costs, and attorneys' fees and costs incurred in the enforcement of the Hiram Agreement.

WHEREFORE, KLC requests this honorable Court enter judgement in favor of KLC against Hiram as follows:

    a. Enter judgment against Hiram in the amount not less than **$1,214,360.00,** plus the late fees and charges that have accrued since the date of filing;

    b. That KLC recover its attorneys' fees and costs incurred in pursuing these claims;

    c. That KLC have and recover pre-and post-judgment interest to the extent provided by applicable law;

    d. For such other relief as the Court deems just and proper.

## COUNT VII
### BREACH OF CONTRACT UNDER THE BUFFALO GROVE AGREEMENT

145.    Plaintiff KLC restates and realleges all preceding paragraphs as though fully set forth herein.

146.    The Buffalo Grove Agreement is a valid and enforceable contract.

147.    KLC duly and fully performed its obligations under the Buffalo Grove Agreement.

148.    Buffalo Grove's failure and refusal to pay all amounts due and owing under the Buffalo Grove Agreement constitutes a default under the Buffalo Grove Agreement and amounts to a breach of Buffalo Grove's contractual obligations to KLC.

149.    KLC has demanded Buffalo Grove pay the all amounts due and owing to KLC under the Buffalo Grove Agreement.

150.    Buffalo Grove has failed and/or refused to respond to KLC's demands for payment under the Buffalo Grove Agreement.

151.    Buffalo Grove promised to pay KLC's attorneys' fees and costs incurred to enforce its rights under the Buffalo Grove Agreement.

152.    Additional late fees, default interest accrues at 18% per annum or the maximum allowed by applicable law, NSF fees, repossession costs, and attorneys' fees may, and/or will accrue on the amount due and owing KLC under the Buffalo Grove Agreement.

153.    KLC has been injured by Buffalo Grove's breach of the Buffalo Grove Agreement in the amount not less than $**1,163,668.00,** plus default interest at the rate of 18% per annum from December 20, 2023 until the date of judgment, or the maximum amount allowed by applicable law, repossession costs, and attorneys' fees and costs incurred in the enforcement of the Buffalo Grove Agreement.

WHEREFORE, KLC, LLC requests this honorable Court enter judgement in favor of KLC, LLC against Buffalo Grove as follows:

a.   Enter judgment against Buffalo Grove in the amount of **$1,163,668.00,** plus the late fees and charges that have accrued since the date of filing;

b.   That KLC recover its reasonable attorneys' fees and costs incurred in pursuing these claims;

c.   That KLC have and recover pre-and post-judgment interest to the extent provided by applicable law;

d.   For such other relief as the Court deems just and proper.

**COUNT VIII**
**<u>BREACH OF PERSONAL GUARANTY AGAINST STEVEN MICHAEL CATON UNDER THE MESA AGREEMENT, THE St CHARLES AGREEMENT, THE AURORA AGREEMENT, THE HIRAM AGREEMENT AND THE BUFFALO GROVE AGREEMENT</u>**

154.   Plaintiff KLC restates and realleges all preceding paragraphs as though fully set forth herein.

155.   The Guaranties executed by Steven Michael Caton constitute valid and enforceable contracts.

156.   KLC has satisfied all conditions precedent necessary to the enforcement of the Guaranties.

157.   The failure and continuing refusal to pay the amounts due and owing under the Finance Contracts constitutes a default under the Finance Contracts.

158.   Steven Michael Caton pursuant to the Guaranties, is legally responsible for all financial and other obligations owed to KLC under the Finance Contracts.

159.   KLC has demanded that Steven Michael Caton fulfill his obligations under the Guaranties, but Steven Michael Caton refuses to do so.

160.    Steven Michael Caton's ongoing refusal to pay all amounts due and owing to KLC and perform all obligations under the Finance Contracts constitutes a breach of the Guaranties.

161.    KLC is entitled to recover from Steven Michael Caton all costs and expense of enforcing the Finance Contracts and the Guaranties.

162.    As a direct and proximate result of Steven Michael Caton's breach of the Guaranties, KLC has suffered damages, plus accruing default interest at 18% per annum or the highest rate allowed under law from January 1, 2024 until the date of judgment, plus attorneys' fees and costs, and all expenses directly or indirectly related to the Equipment including costs of repossession, reconditioning and resale, if applicable.

**WHEREFORE**, Plaintiff KLC requests that the Court enter judgment against Defendant Steven Michael Caton, jointly and severally, as follows:

a.  $1,214,360.00 under his Guaranty of the Hiram Agreement;

b.  $1,192,675.00 under his Guaranty of the Aurora Agreement;

c.  $1,163,970.00 under his Guaranty of the St. Charles Agreement;

d.  $3,586,983.75 under his Guaranty of the Mesa Agreement;

e.  $1,163,668.00 under his Guaranty of the Buffalo Grove Agreement;

f.  Award interest at a rate of 18% per annum from the date of default until the date of judgment or the highest rate allowed under applicable law;

g.  Award attorneys' fees and costs incurred in enforcement of the Finance Contracts or the Guaranties; and

h.  Award and all other damages and expenses directly or indirectly related to the Finance Contracts, the Guaranties and the Equipment including costs of repossession, reconditioning and resale, if applicable.

## COUNT IX
### BREACH OF PERSONAL GUARANTY AGAINST STEPHEN RYAN HOLDEN UNDER THE MESA AGREEMENT, THE St CHARLES AGREEMENT, THE AURORA AGREEMENT, THE HIRAM AGREEMENT, THE BUFFALO GROVE AGREEMENT, AND THE ADDITIONAL COLLATERAL

163.    Plaintiff KLC restates and realleges all preceding paragraphs as though fully set forth herein.

164.    The Guaranties executed by Stephen Ryan Holden constitute valid and enforceable contracts.

165.    KLC has satisfied all conditions precedent necessary to the enforcement of the Guaranties.

166.    The failure and continuing refusal to pay the all amounts due under the Finance Contracts constitutes a default under the Finance Contracts.

167.    Stephne Ryan Holden's pursuant to the Guaranties, is legally responsible for all financial and other obligations owed to KLC under the Finance Contracts.

168.    KLC has demanded that Stephen Ryan Holden fulfill its obligations to it under the Guaranties, but Stephen Ryan Holden refuses to do so.

169.    Stephen Ryan Holden's ongoing refusal to pay the amounts due and owing to KLC under the Finance Contracts constitutes a breach of the Guaranties.

170.    KLC is entitled to recover from Stephen Ryan Holden all costs and expense of enforcing the Finance Contracts and the Guaranties.

171.    As a direct and proximate result of Ryan Holden's breach of the Guaranty, KLC has suffered damages, plus accruing default interest at 18% per annum or the highest rate allowed under applicable law from January 1, 2024 until the date of judgment, plus attorneys' fees and

costs, and all expenses directly or indirectly related to the Equipment including costs of repossession, reconditioning and resale, if applicable.

**WHEREFORE**, Plaintiff KLC requests that the Court enter judgment against Defendant Stephen Ryan Holden, jointly and severally, as follows:

a. $1,214,360.00 under his Guaranty of the Hiram Agreement;

b. $1,192,675.00 under his Guaranty of the Aurora Agreement;

c. $1,163,970.00 under his Guaranty of the St. Charles Agreement;

d. $3,586,983.75 under his Guaranty of the Mesa Agreement;

e. $1,163,668.00 under his Guaranty of the Buffalo Grove Agreement;

f. Award interest at a rate of 18% per annum from January 1, 2024 until the date of judgment or the highest rate allowed under applicable law;

g. Award attorneys' fees and costs incurred in enforcement of the Finance Contracts or the Guaranties; and

h. Award and all damages and expenses directly or indirectly related to the Finance Contracts, the Guaranties, the Equipment including costs of repossession, reconditioning and resale, if applicable.

### COUNT X
### BREACH OF PERSONAL GUARANTY AGAINST STEPHEN WAYNE HOLDEN UNDER THE MESA AGREEMENT, THE St CHARLES AGREEMENT, THE AURORA AGREEMENT, THE HIRAM AGREEMENT AND THE BUFFALO GROVE AGREEMENT

172.    Plaintiff KLC restates and realleges all preceding paragraphs as though fully set forth herein.

173.    The Guaranties executed by Stephen Way Holden constitute valid and enforceable contracts.

174.    KLC has satisfied all conditions precedent necessary to the enforcement of the Guaranties.

175.    The failure and continuing refusal to pay all amounts due and owing under the Finance Agreements constitutes a default under the Finance Agreements.

176.    Stephen Wayne Holden's pursuant to the Guaranties, is legally responsible for all financial and other obligations owed to KLC under the Finance Contracts.

177.    KLC has demanded that Stephen Wayne Holden fulfill its obligations to it under the Guaranties, but Wayne Holden refuses to do so.

178.    Wayne Holden's ongoing refusal to pay all amounts due and owing to KLC under the Finance Contracts constitutes a breach of his Guaranties.

179.    KLC is entitled to recover from Stephen Wayne Holden all costs and expense of enforcing the Finance Agreements and the Guaranties.

180.    As a direct and proximate result of Stephen Wayne Holden's breach of the Guaranty, KLC has suffered damages plus accruing default interest at 18% per annum from January 1, 2024 or the highest rate under applicable law until the date of judgment, plus attorneys' fees and costs, and all expenses directly or indirectly related to the Equipment including costs of repossession, reconditioning and resale, if applicable.

**WHEREFORE**, Plaintiff KLC requests that the Court enter judgment against Defendant Stephen Wayne Holden, jointly and severally, as follows:

a.   $1,214,360.00 under his Guaranty of the Hiram Agreement;

b.   $1,192,675.00 under his Guaranty of the Aurora Agreement;

c.   $1,163,970.00 under his Guaranty of the St. Charles Agreement;

d.   $3,586,983.75 under his Guaranty of the Mesa Agreement;

31

e. $1,163,668.00 under his Guaranty of the Buffalo Grove Agreement;

f. Award interest at a rate of 18% per annum from January 1, 2024 until the date of judgment or the highest rate allowed under applicable law;

g. Award attorneys' fees and costs incurred in enforcement of the Finance Contracts or the Guaranties; and

h. Award all damages and expenses directly or indirectly related to the Finance Contracts, the Guaranties, the Equipment including costs of repossession, reconditioning and resale, if applicable.

## COUNT XI
### BREACH OF PERSONAL GUARANTY AGAINST SARC UNDER THE MESA AGREEMENT, THE St CHARLES AGREEMENT, THE AURORA AGREEMENT, THE HIRAM AGREEMENT AND THE BUFFALO GROVE AGREEMENT

181. Plaintiff KLC restates and realleges all preceding paragraphs as though fully set forth herein.

182. The Guaranties executed by SARC constitute valid and enforceable contracts.

183. KLC has satisfied all conditions precedent necessary to the enforcement of the Guaranties.

184. The failure and continuing refusal to pay all amounts due and owing under the Finance Agreements constitutes a default under the Finance Agreements.

185. SARC pursuant to the Guaranties, is legally responsible for all financial and other obligations owed to KLC under the Finance Contracts.

186. KLC has demanded that SARC fulfill its obligations to it under the Guaranties, but SARC refuses to do so.

187.    SARC's ongoing refusal to pay all amounts due and owing to KLC under the Finance Contracts constitutes a breach of its Guaranties.

188.    KLC is entitled to recover from SARC all costs and expense of enforcing the Finance Agreements and the Guaranties.

189.    As a direct and proximate result of SARC's breach of the Guaranty, KLC has suffered damages plus accruing default interest at 18% per annum from January 1, 2024 or the highest rate under applicable law until the date of judgment, plus attorneys' fees and costs, and all expenses directly or indirectly related to the Equipment including costs of repossession, reconditioning and resale, if applicable.

**WHEREFORE**, Plaintiff KLC requests that the Court enter judgment against Defendant SARC, jointly and severally, as follows:

a.  $1,214,360.00 under Guaranty of the Hiram Agreement;

b.  $1,192,675.00 under Guaranty of the Aurora Agreement;

c.  $1,163,970.00 under Guaranty of the St. Charles Agreement;

d.  $3,586,983.75 under Guaranty of the Mesa Agreement;

e.  $1,163,668.00 under Guaranty of the Buffalo Grove Agreement;

f.  Award interest at a rate of 18% per annum from January 1, 2024 until the date of judgment or the highest rate allowed under applicable law;

g.  Award attorneys' fees and costs incurred in enforcement of the Finance Contracts or the Guaranties; and

h.  Award all damages and expenses directly or indirectly related to the Finance Contracts, the Guaranties, the Equipment including costs of repossession, reconditioning and resale, if applicable.

33

Respectfully Submitted,

KLC Financial, LLC

By:     s/ Dennis A. Dressler
        One of Its Attorneys

Dennis A. Dressler, Esq.  (Mo Bar 49136)
Julie A. Ellis, Esq. (Mo Bar 49819
Dressler | Peters, LLC
Hammons Tower
901 East St. Louis Street, Suite 602
Springfield, MO  65806
Phone: (312) 602-7360
Fax: (312) 637-9378
Email:  ddressler@dresslerpeters.com
Email:  jellis@dresslerpeters.com

34